IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| eTOYS DIRECT 1, LLC, et al.,[1] | ) | Case No. 08-13412 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY CODE
SECTIONS 105(a), 363, AND 507(a) FOR AN ORDER AUTHORIZING
THE DEBTORS TO (I) PAY PREPETITION WAGES, SALARIES, EMPLOYEE
BENEFITS, AND OTHER COMPENSATION; (II) REMIT WITHHOLDING
OBLIGATIONS; (III) MAINTAIN EMPLOYEE COMPENSATION AND BENEFITS
PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS; AND
(IV) HAVE APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS
RECEIVE, PROCESS, HONOR, AND PAY CERTAIN CHECKS PRESENTED
FOR PAYMENT AND HONOR CERTAIN FUND TRANSFER REQUESTS**

The above-captioned debtors and debtors in possession (the "Debtors") in the

instant chapter 11 cases (the "Chapter 11 Cases"), hereby move this Court (the "Motion") for the

entry of an order (the "Order"), pursuant to sections 105(a), 363, and 507(a) of title 11 of the

United States Code (the "Bankruptcy Code"), authorizing the Debtors to (i) pay and/or honor

prepetition wages, salaries, employee benefits, and other compensation or reimbursements;

(ii) remit withholding obligations; (iii) maintain employee compensation and benefits programs

and pay related administrative obligations; and (iv) have applicable banks and other financial

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: eToys Direct 1, LLC (N/A); The Parent Company (7093); BabyUniverse, Inc. (7990); Dreamtime Baby, Inc. (8047); eToys Direct, Inc. (7296); PoshTots, Inc. (8660); eToys Direct 2, LLC (N/A); eToys Direct 3, LLC (N/A); Gift Acquisition, L.L.C. (0297); and My Twinn, Inc. (1842). The address for each of the Debtors is 717 17th Street, Suite 1300, Denver, CO 80202, with the exception of PoshTots, Inc., the address for which is 5500 Cox Road, Suite M, Glenn Allen, VA 23060.

institutions receive, process, honor, and pay certain checks presented for payment and honor certain fund transfer requests. In further support of this request, the Debtors state as follows:

## Jurisdiction and Venue

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2.     The statutory predicate for the relief sought by this Motion are Bankruptcy Code Sections 105(a), 363 and 507(a).

## General Background

3.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code. The Debtors are continuing in possession of their property and are managing their business as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.     No trustee or examiner has been appointed in these Chapter 11 Cases.

5.     The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the *Declaration of Michael J. Wagner in Support of First Day Motions* (the "Wagner Declaration") filed contemporaneously with this Motion and incorporated herein by reference.

## Relief Requested

6.     As of the Petition Date, the Debtors employed approximately ninety full-time employees in salaried and administrative positions, including customer service, and four

independent contractors (the "Employees"). The Employees work at the Debtors' offices in Denver, Colorado, and at the Debtors' offices located in Blairs, VA; Richmond VA; Glen Allen, VA; and Pittsfield MA. Sixty-three employees are involved in sales and sales support roles. The remaining Employees perform mainly office administrative and support services.

7.      By this Motion, the Debtors seek to minimize the personal hardship to the Employees as a result of the filing of these Chapter 11 Cases and to minimize the disruption to the Debtors' business, for the benefit of the Debtors' creditors and their estate, by requesting, in their discretion, the authority (a) to pay and/or honor, *inter alia*, certain prepetition claims for, among other items, wages and salaries (the "Wages"), employee benefits and other compensation or reimbursements (the "Benefits"), and to pay all costs incident to the foregoing (collectively, the "Wages and Benefits"), and (b) to continue to pay and/or honor such Wages and Benefits as they become due postpetition in the ordinary course of the Debtors' business. The Wages and Benefits for which this relief is sought are set forth in detail below.

8.      The Debtors have been paying and/or honoring the Wages and Benefits in the ordinary course of business up to the Petition Date. The Debtors represent that they have (or will have) sufficient postpetition funding to pay promptly all Wages and Benefits, to the extent described herein, on an ongoing basis and in the ordinary course of business. Consequently, there is no reason for the payment of the Wages and Benefits to the Employees to be disrupted, which disruption would directly harm the Employees and the Debtors' efforts in these Chapter 11 Cases.

## Wages and Benefits

### A.    Wages and Salaries and Associated Withholding

9.    Salaried Employees ("Salaried Employees") are paid in arrears bi-weekly through direct deposit or check. Hourly employees ("Hourly Employees") are paid weekly, one week in arrears. The independent contractors (the "1099 Workers") are paid weekly, one week in arrears. The Debtors' average 2008 gross payroll every two weeks for Salaried Employees, Hourly Employees and 1099 Workers (the "Bi-Weekly Payroll"), namely (a) the average payroll for a bi-weekly payment to Salaried Employees plus (b) two weekly payrolls to Hourly Employees plus (c) the two weekly payments to the 1099 Workers, was approximately $480,000, which figure includes wages and salaries, taxes (including withholding taxes paid by Employees), and withholdings for various Employee benefits (described more fully below). Accounting for the many recent layoffs, the Debtors estimate that average postpetition Bi-Weekly Payroll will be approximately $251,730.

10.    The last date on which the Debtors' Salaried Employees were paid was December 26, 2008, for the period ended January 2, 2009. The last date on which the Debtors' Hourly Employees were paid was December 26, 2008, for the period ended January 2, 2009. The last date on which the Debtors' 1099 Workers were paid was December 23, 2008, for the period ended December 19, 2008.

11.    As of the Petition Date, the Debtors owe an estimated $8,500 to the 1099 Workers for earned but unpaid Wages. The Debtors also seek authority to pay up to $12,500 to Hourly Employees in the event that the Debtors underestimated Wages for Hourly Employees

during this busy holiday season. The Debtors therefore seek authority to pay the unpaid Wages up to a total and aggregate amount of $21,000. No Employee is owed more than $10,950 in unpaid Wages .

12.     The Debtors' payroll is disbursed by ADP. The Debtors fund their direct deposit and check payroll to ADP two days in advance of payroll. Salaried Employees receive their direct deposits or checks through ADP every other Friday. Hourly employees receive their direct deposits or checks through ADP every Friday. As of the Petition Date, the Debtors owe ADP an estimated $3,000 in unpaid fees with respect to ADP's processing of the Debtors' payroll and related administration (the "Administration Fees"). The Debtors request authority to pay ADP the Administration Fees up to $3,000 that ADP may be owed in connection with the foregoing services and to continue to pay ADP postpetition in the ordinary course of the Debtors' business with respect to the same.

13.     In the ordinary course of its business, the Debtors routinely withhold from Wages certain amounts that the Debtors are required to transmit to third parties for purposes such as Social Security and Medicare, federal and state or local income taxes, contributions to the Debtors' benefit plans described more fully below, 401(k) contributions, garnishment, child support or similar obligations pursuant to court order or law (collectively, the "Withholding Obligations"). In addition to the Withholding Obligations, the pre-petition amount of which amounts to approximately $4,375 and is encompassed within the total figure for prepetition Wages described above, the Debtors estimate that, as of the Petition Date, approximately $1,750 of the Debtors' contributions to tax withholdings were incurred and unpaid in connection with as

yet unpaid Wages (the "Employer Tax Obligations"). The Debtors request authority to pay the

Employer Tax Obligations and to satisfy the other Withholding Obligations in connection with

the payment of the Wages and to the extent described more fully below.

**B.    Business Expense Reimbursements**

14.    The Debtors customarily reimburse Employees who incur business

expenses in the ordinary course of performing their duties on behalf of the Debtors. Such

expenses typically include, but are not limited to, business-related travel expenses, including air

travel, auto travel and car rental, lodging, meal charges, business lunches and entertainment

expenses, telephone charges, and miscellaneous other allowed travel expenses (the "General

Reimbursement Obligations").

15.    It is difficult for the Debtors to determine the exact amounts of General

Reimbursement Obligations that are due and owing for any particular time period since the

expenses incurred by Employees on behalf of the Debtors throughout the year vary on a monthly

basis and because there may be some delay between when an Employee incurs an expense and

submits the corresponding expense report for processing. Based on historical experience, the

Debtors anticipate that, as of the Petition Date, the Debtors owe an estimated $5,000 in General

Reimbursement Obligations for all Employees. The Debtors seek authority to pay any

prepetition General Reimbursement Obligations up to a total amount of $5,000, and to continue

to honor General Reimbursement Obligations incurred postpetition in the ordinary course of the

Debtors' business.

## C.     Health and Related Benefits

16.     The Debtors provide several health and related benefit plans to their Employees, including medical and vision insurance, health care reimbursement account, dental insurance, life insurance, accidental death and disability insurance, and short and long-term disability insurance (collectively, the "Health Plans").

### a.     Medical and Vision Plans

17.     The Debtors offer six different medical insurance plans, some of which include vision coverage, through United Healthcare and Anthem (collectively, the "Medical Plans"). The Debtors' contribution to premiums due under the Medical Plans amount to approximately 52-67% of the cost of the Medical Plans, depending on the Medical Plan, and total approximately $72,784 per month. Each pay period, Employees make contributions through the Debtors, to the Medical Plans for themselves and their eligible dependents depending upon which plan they select, and the Debtors pay the balance of the contributions to the Medical Plans, in advance, on a monthly basis (together, the "Medical Plan Contributions"). Because the Debtors pay their medical premium amounts in advance, they do not believe any prepetition Medical Plan Contributions are owed as of the Petition Date. The Debtors seek authority to continue to offer their Medical Plans postpetition in the ordinary case of business in their discretion.

### b.     Dental Plan

18.     The Debtors also provide their eligible Employees with dental insurance under plans with MetLife (the "Dental Plans"). The Debtors pay approximately 46-80% of the

premium costs, depending on the Dental Plan, while the Employees pay the remainder of the premium costs. The Debtors' contribution to the premiums of the Dental Plans is $7,642 per month. Because the Debtors pay their dental premium amounts one month in advance they do not believe any Dental Plan Contribution amounts are owed as of the Petition Date. The Debtors seek authority to continue to offer the Dental Plans postpetition in the ordinary course of business in their discretion.

### c. Exec-U-Care

19. The Debtors offer executives a supplemental medical reimbursement policy called Exec-U-Care, which is run by Lincoln Financial Group ("Lincoln"). Exec-U-Care supplements the Debtors' medical plans by reimbursing executives and eligible dependents for health care expenses not covered by the medical plans (the "Exec Reimbursement Obligations"). The Exec Reimbursement Obligations are paid directly by Lincoln. As of the Petition Date, the Debtors do not believe that any amount is owed on account of Exec Reimbursement Obligations. The Debtors seek authority to continue to honor Exec Reimbursement Obligations incurred postpetition in the ordinary course of the Debtors' business.

### d. Flexible Spending Accounts

20. The Debtors also offer their Employees access to flexible spending accounts ("FSAs") to set aside pre-tax dollars to pay for eligible medical and dependent care costs. The FSAs are administered for the Debtors by ADP. An eligible Employee's FSA deduction is taken out of his or her paycheck each pay period and put in an account to be used for eligible expenses throughout the year. ADP receives claims for benefits and disburses

payments on such claims, and the Debtors pay ADP a monthly fee based upon the number of participants and certain associated expenses. Because FSA contributions from Employees are part of payroll, which has been paid through January 2, 2009, there no accrued FSA contributions from Employees that remain unremitted as of the Petition Date. The Debtors owe ADP on the Petition Date certain fees to administer the FSAs, which amount is included in the $3,000 of Administration Fees remaining unpaid as of the Petition Date, as mentioned above. The Debtors seek authority to honor the FSA Contributions in connection with satisfaction of the Wages, to pay the Administration Fees, and to continue to provide the FSA program postpetition in the ordinary course of the Debtors' business.

### e. Life, Accidental Death and Dismemberment and Disability Insurance

21.     The Debtors also provide their Employees with life insurance, short-term and long-term disability insurance, and with accidental death and disability insurance, all through MetLife at no cost to the Employees. The Debtors make payment for the described coverage on a monthly basis.

22.     Specifically, the Debtors provide life insurance benefits to their Salaried Employees at 1.5 times the Employee's base salary, up to a maximum amount of $500,000 (the "Life Insurance").

23.     The Debtors also provide accidental death and dismemberment insurance ("AD&D Insurance") to all Employees up to a maximum of $500,000.

24.     The Debtors also provide all Employees with short and long-term disability coverage (the "Disability Insurance"). Short-term disability pays 66% of pre-disability

pay per week, for a period of 12 weeks up to a maximum of $2,000 per week. Long-term disability pays 60% of pre-disability pay per month (to a maximum of $5,000 per month).

25.     The Debtors' premium contributions to the Life Insurance, AD&D Insurance and Disability Insurance are paid monthly, in advance, at a total cost of approximately $7,216 per month. Because the Debtors pay their contributions to the Life Insurance, AD&D Insurance and Disability Insurance one month in advance they do not believe any amounts are owed as of the Petition Date. The Debtors seek authority to continue to offer the Life Insurance, AD&D Insurance and Disability Insurance postpetition in the ordinary course of business in their discretion.

### f.     Holidays, Vacation, and Leave

26.     The Debtors provide their Salaried Employees with three forms of regular paid time off ("PTO") consisting of holidays, vacation, and sick leave time. In addition, Employees are eligible for other PTO, including, among other things, for funeral leave, jury duty, time off to vote, and bereavement. With respect to holidays, the Debtors provide for eleven paid holidays, seven fixed and four floating.

27.     Vacation for all Salaried Employees is accrued starting as of the Salaried Employee's respective hire date and is based upon length of service. Employees receive 80 hours of annual paid vacation during their first two years of service, 120 hours of annual paid vacation during their third, fourth, fifth and sixth years of service, and 160 hours of annual paid vacation thereafter. Unused vacation days are not paid out upon year-end and may not be carried over to the next year.

28.     With respect to sick leave, Hourly Employees accrue 32 hours of sick leave per year. Used sick time may not be carried over from year to year.

29.     The Debtors believe there are no amounts owing on the Petition Date for PTO. The Debtors request authority to honor similar PTO policies regarding vacation time, sick time, personal time, and holidays on a post-petition basis and in the ordinary course of the Debtors' business.

### g.     401(k) Plan

30.     The Debtors offer their eligible Employees a 401(k) retirement plan (the "401(k) Plan") administered by Digital Retirement Services. An Employee is eligible for the 401(k) Plan 90 days following the Employee's hire date. Employees are eligible for a matching contribution to the 401(k) Plan from the Debtors of 100% for the first 3% of the Employees' contribution, and of 50% for the 4th % and 5th % of the Employees' contribution. The Debtors, however, have terminated matching contributions for 2009.

31.     The Employee contributions to the 401(k) Plan, including repayments of loans against the 401(k) Plan, are an estimated $38,400 per Bi-Weekly Payroll. The Debtors incur approximately $12,500 per year in administrative and auditing costs to administer the 401(k) Plan (the "401(k) Fees"). The Debtors estimate that, as of the Petition Date, there are no accrued 401(k) Plan contributions from Employees that remain unremitted. The Debtors further request authority, in their discretion, to continue their existing 401(k) Plan and pay any 401(k) Fees in the ordinary course of the Debtors' business. As mentioned above, the Debtors will no longer be matching Employee contributions in 2009.

### h.    Workers' Compensation Insurance

32.    Under the laws of various states, the Debtors are required to maintain workers' compensation insurance to provide their Employees with coverage for claims arising from or related to their employment with the Debtors. The Debtors currently maintain an annual workers' compensation policy (the "Workers' Compensation Insurance Policy") with The Hartford ("Hartford") pursuant to which Hartford provides workers' compensation insurance coverage up to the statutory limits and up to $500,000 per occurrence for employer liability.

33.    The current term of the Workers' Compensation Policy runs through May 8, 2009, and costs $149,074 on an annual basis. No amounts are owing as of the Petition Date. The next payment is owing in February 2009 in the amount of $29,808. The Debtors hereby seek authority to maintain their workers' compensation and other liability insurance in accordance with applicable law postpetition and to pay all premium installments as they come due in the ordinary course of business.

### i.    Bonus Program

34.    Prepetition, the Debtors offered incentive and discretionary bonus programs to their Employees. The Debtors' incentive bonus program provided incentive bonus payments to Employees depending on the Debtors' revenue and EBITDA performance, as well as the Debtors' sales level. The Debtors also award bonuses based on the individual performance of the Employee. As of the Petition Date, the Debtors do not owe their Employees any unpaid amounts under their bonus programs. The Debtors reserve the right, however, to

continue their prepetition bonus programs postpetition in the ordinary course of business and in their discretion.[2]

35.    In sum, the Debtors seek the authority to pay or honor in their sole discretion the prepetition Wages and Benefits, including:

        a.    the Wages;

        b.    the Administration Fees;

        c.    the Employer Tax Obligations;

        d.    the General Reimbursement Obligations; and

        e.    prepetition amounts due under any other benefit program described

in this Motion; each as described more fully above, and to continue, in their sole discretion, the foregoing Benefits on a postpetition basis.[3]

### Basis for Relief

36.    Statutory support for the requested relief exists pursuant to sections 105(a), 363(b)(1) and (c)(1), and 507(a) of the Bankruptcy Code and the "necessity of payment" doctrine (discussed *infra*). Bankruptcy Code section 363(b)(1) authorizes a debtor in possession to use property of the estate other than in the ordinary course of business after notice and a hearing. Bankruptcy Code section 363(c) authorizes a debtor in possession to enter into transactions in the ordinary course of business without notice and a hearing. Bankruptcy Code

---

[2] None of the Employees subject to the bonus program are "insiders" as defined under the Bankruptcy Code. Thus, section 503(c) of the Bankruptcy Code is not applicable to the Debtors' bonus program.
[3] Nothing in this Motion is intended to or shall convert any prepetition claim into an administrative claim.

section 105(a) further provides, in pertinent part, that this Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

37.     The relief requested in this Motion is supported by the well-established "necessity of payment" doctrine.[4] The "necessity of payment" doctrine, which has been embraced by the Third Circuit, "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus." *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3rd Cir. 1981). *See also In re Sharon Steel Corp.*, 159 B.R. 730, 737 (Bankr. W.D. Pa. 1993) (embracing "necessity of payment" doctrine and citing *Lehigh & New England Ry. Co.* with approval). Similarly, the court in *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989), stated that the "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *Id.* at 176. In that case, the court permitted Eastern Air Lines, Inc., to pay its current employees' prepetition wages, salaries, medical benefits, and business expense claims. Judge Lifland relied on his equitable powers under Bankruptcy Code section 105(a) and, in particular, the "necessity of payment" doctrine to authorize such payments, recognizing that the debtor had to make the payments in order to retain its current employees and maintain positive employee morale—two factors that he deemed critical to the rehabilitation of an operating debtor. *Id.* at 176-77 (*citing*

---

[4] The doctrine was first articulated by the Supreme Court in railroad reorganization cases, *see Miltenberger v. Logansport Ry.*, 106 U.S. 286 (1882), and it has been held to be equally applicable to non-railroad debtor cases. *See, e.g., Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (hotel); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989) (airline).

H.R. Rep. No. 595 95th Cong. 1st Sess. 16 (1977)). Other courts also have found that the "necessity of payment" doctrine applies to the payment of prepetition employee compensation and benefits. *See In re Chateaugay Corp.*, 80 B.R. 279, 281 (Bankr. S.D.N.Y. 1987) (under the "necessity of payment" doctrine, bankruptcy court should defer to the debtor's business judgment in permitting payment of certain workers' compensation claims).

38.     This Court similarly has approved the payment of prepetition claims of employees for wages, salaries, independent contractor obligations, expenses, and benefits on the grounds that the payment of such claims was necessary to effectuate a successful reorganization or liquidation. *See, e.g., In re NetEffect, Inc.*, Case No. 08-12008 (KJC) (Bankr. D. Del. Aug. 28, 2008); *In re Western Nonwovens Inc.*, Case No. 08-11435 (PJW) (Bankr. D. Del. July 15, 2008); *In re Global Motorsport Group, Inc.*, Case No. 08-10192 (KJC) (Bankr. D. Del. Feb. 1, 2008); *In re Answer Financial Inc.*, Case No. 08-10140 (MFW) (Bankr. D. Del. Jan. 23, 2008); *In re Aegis Mortgage Corporation*, Case No. 07-11119 (BLS) (Bankr. D. Del. Aug. 15, 2007); *In re Mortgage Lenders Network USA, Inc.*, Case No. 07-10146 (Bankr. D. Del. Feb. 7, 2007) (PJW); *In re Global Home Products LLC, et al.*, Case No. 06-10340 (Bankr. D. Del. Apr. 11, 2006)(KG); *In re Proxim Corp.*, Case No. 05-11639 (PJW) (Bankr. D. Del. June 15, 2005); *In re Maxide Acquisition, Inc.*, Case No. 05-10429 (MFW) (Bankr. D. Del. Feb. 15, 2005); *In re Redback Networks, Inc.*, Case No. 03-13359 (MFW) (Bankr. D. Del. Nov. 5, 2003).

39.     The "necessity of payment" doctrine authorizes the Debtors to pay the amounts it seeks authority to pay pursuant to this Motion because the Debtors' Employees are

critical assets necessary both to the Debtors' operations and the successful prosecution of these Chapter 11 Cases.

40.    Pursuant to sections 507(a)(4) of the Bankruptcy Code, claims of Employees of the Debtors for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Commencement Date are afforded priority unsecured status to the extent of $10,950 per Employee. The Debtors believe that most of the Employee Wages relating to the period prior to the Petition Date constitute priority claims under sections 507(a)(4) of the Bankruptcy Code. As priority claims, the Wages and Benefits must be paid in full before any general unsecured obligations of the Debtors may be satisfied. Accordingly, the relief requested may affect only the timing of the payment of these priority obligations, and will not prejudice the rights of general unsecured creditors or other parties in interest.

41.    Pursuant to the relief requested herein, the Debtors request authority only to pay up to the $10,950 statutory cap under Bankruptcy Code section 507(a)(4) to each Employee on account of all unpaid Wages collectively owing to such Employee.[5]

42.    Many Employees live from paycheck to paycheck and rely exclusively on receiving their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses. These Employees may be exposed to significant financial and healthcare related problems if the Debtors are not permitted to pay and/or honor the Wages and Benefits, and the expenses associated therewith, in the ordinary course of the Debtors' business.

---

[5]  In the event any unpaid amounts owing to any Employee on account of unpaid Wages exceed the $10,950 statutory cap, the Debtors reserve the right to petition the Court for authority to pay such amounts.

Moreover, the Debtors believe that if they are unable to honor accrued Employee Wages and the Benefits described above, including honoring PTO, Employee morale and loyalty will be jeopardized at a time when Employee support is critical. This issue is particularly significant in a situation where, as here, there have been prepetition layoffs. If the Debtors are not authorized to pay for medical benefits, then many of the Debtors' Employees may not be reimbursed or otherwise have their medical benefits claims paid. In addition, certain Employees may become primarily obligated for the payment of these claims in cases where health care providers have not been reimbursed. The Debtors believe such uncertainty will cause significant anxiety at precisely the time the Debtors needs their Employees to perform their jobs at peak efficiency.

43.     Additionally, the Withholding Obligations do not constitute property of the Debtors' estate and principally represent employee earnings that governments (in the case of taxes), Employees (in the case of voluntary Withholding Obligations), and judicial authorities (in the case of involuntary Withholding Obligations), have designated for deduction from Employee paychecks. The failure to transfer these withheld funds could result in hardship to certain Employees. The Debtors expect inquiries from garnishers regarding the Debtors' failure to submit, among other things, child support and alimony payments, which are not the Debtors' property but, rather, have been withheld from Employee paychecks. Moreover, if the Debtors cannot remit these amounts, the Debtors' Employees may face legal action due to the Debtors' failure to submit these payments.

44.     Finally, the Debtors submit that with respect to the wage-related taxes that constitute "trust fund" taxes, the payment of such taxes will not prejudice other creditors of the

Debtors' estate given that the relevant taxing authorities would have a priority claim under section 507(a)(8) of the Bankruptcy Code in respect of such obligations. Moreover, the monies payable for trust fund taxes, as well as the other funds that are held in trust for the benefit of third parties, such as withheld funds with respect to the 401(k) Plan, are not property of the Debtors' estate. *See, e.g., Begier v. IRS*, 496 U.S. 53 (1990) (withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estates).

45.     The Employees have an intimate knowledge of the operation of the Debtors' business and are critical components to the success of these Chapter 11 Cases. Deterioration in the morale and welfare of the Employees at this critical time undoubtedly would adversely impact the Debtors and their ability to maximize the value of their assets. Satisfaction of the Wages and Benefits, as described herein, is necessary to maintain the Employees' morale during the case and to insure continued, efficient operation in order to maximize value for all creditors.

46.     Finally, Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, which became effective December 1, 2007, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 20 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). For the reasons described more fully above and as supported by the Wagner Declaration, the Debtors submit that the requirements of Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm

## No Assumption or Assignment of Employee Benefits

47.     To the extent any Employee Benefits or related agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume any such contract.  Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute a postpetition assumption or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code.  Moreover, authorization to pay all amounts on account of Employee Wages and Benefits shall not affect the Debtors' right to contest the amount or validity of these obligations.

### Request for Authority for Banks and Other Financial Institutions to Honor Checks Issued to Pay Wages and Benefits, to Honor All Fund Transfer Requests Relating to the Foregoing, and to Pay All Processing Fees Associated with Payment of Employee Wages and Benefits

48.     The Debtors request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors to Employees, whether such checks were presented or fund transfer requests were submitted prior to, on, or after the Petition Date. The Debtors represent that they have (or will have) sufficient postpetition funding to pay promptly all Employee Wages and Benefits, to the extent described herein, on an ongoing basis and in the ordinary course of business.  Nothing contained in this Motion, however, shall constitute a request for authority to assume any agreements, policies, or procedures relating to Employee Wages and Benefits.  Further, the Debtors seek to retain the discretion to decide which Employee Wages and Benefits it will pay and honor, and nothing in this Motion shall be deemed

an admission by the Debtor that any Employee Wages and Benefits will in fact be paid or honored.

49.    Finally, the Debtors request authority to pay all of the processing fees associated with payment of the Employee Wages and Benefits including, but not limited to, any fees owed to any third party administrators of Employee Benefits as described in the Motion.

## **No Previous Request**

50.    No prior motion for relief requested herein has been made to this or any other court.

## **Notice**

51.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; and (b) the Debtors' prepetition and post petition lenders. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request that the Court enter an order approving the relief set forth above and granting such other relief as is just and proper.

Dated:   December _28_, 2008     PACHULSKI STANG ZIEHL & JONES LLP

                                        Laura Davis Jones (Bar No. 2436)
Jeffrey W. Dulberg (CA Bar No. 181200)
Michael R. Seidl (Bar No. 3889)
919 N. Market Street, 17th Floor
Wilmington, DE 19801
Telephone: 302/652-4100
Facsimile: 302/652-4400
Email: ljones@pszjlaw.com
       jdulberg@pszjlaw.com
       mseidl@pszjlaw.com

[Proposed] Counsel for eToys Direct 1, LLC, et al.,
Debtors and Debtors in Possession