IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| eTOYS DIRECT 1, LLC, et al.,[1] | ) | Case No. 08-13412-BS |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Docket No. 65** |

### ORDER (I) APPROVING ASSET PURCHASE AGREEMENT WITH POSH VENTURES, LLC, (II) AUTHORIZING THE DEBTORS (X) TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES AND (Y) TO ASSUME AND ASSIGN EXECUTORY CONTRACTS IN ACCORDANCE THEREWITH, AND (III) GRANTING OTHER RELATED RELIEF

Upon the Debtors' Motion Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for Orders (A) Approving Sale Procedures and Bid Protections, Including Break-Up Fees, in Connection With Sale of Substantially All Assets; (B) Scheduling an Auction for and Hearing to Approve One or More Sales; (C) Approving Notice of Respective Date, Time and Place for Auction and for Hearing on Approval of Sale(s); (D) Authorizing the Debtors (X) to Sell Substantially All Assets, Free and Clear of Liens, Claims, and Encumbrances and to Conduct Sales at the Debtors' Headquarters and Warehouse Locations and (Y) to Assume and Assign Executory Contracts and Unexpired Leases of Nonresidential Real Property; (E) Establishing Procedures in Connection with the Rejection of Executory Contracts and Unexpired Leases of Nonresidential Real Property; and (F) Granting Other Related Relief (the "Motion"), of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order pursuant to sections 105, 363, and 365 of Title 11 of the United States Code

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: eToys Direct 1, LLC (N/A); The Parent Company (7093); BabyUniverse, Inc. (7990); Dreamtime Baby, Inc. (8047); eToys Direct, Inc. (7296); PoshTots, Inc. (8660); eToys Direct 2, LLC (N/A); eToys Direct 3, LLC (N/A); Gift Acquisition, L.L.C. (0297); and My Twinn, Inc. (1842). The address for each of the Debtors is 717 17th Street, Suite 1300, Denver, CO 80202, with the exception of PoshTots, Inc., the address for which is 5500 Cox Road, Suite M, Glenn Allen, VA 23060.

(the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the Debtors to, *inter alia*, (i) conduct an Auction[2] and enter into one or more asset purchase agreements, (ii) sell substantially all of the Debtors' assets (the "Assets") free and clear of all liens, claims, encumbrances, and interests, with such sale to be in accordance with the terms and conditions of such asset purchase agreements, (iii) assume and assign to the Successful Bidder(s) certain executory contracts and unexpired leases of non-residential real property; and (iv) granting related relief; and this Court having entered an order dated January 16, 2009 (the "Procedures Order," Docket No. 143), authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction and Sale Procedures to consider higher or otherwise better offers for the Assets, establishing a date for the Auction, and approving, *inter alia*, (i) the Sale Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction, the Sale Procedures, the Cure Notice, and the Sale Hearing; and the Court having established the date of the Sale Hearing; and the Auction having been conducted on February 4, 2009; and the Debtors having determined that Posh Ventures, LLC, a Virginia limited liability company, was the Successful Bidder (the "Buyer") in connection with the form of asset purchase agreement attached hereto as Exhibit A as modified by the amendment attached hereto as Exhibit B to reflect the Successful Bid of $735,000.00 (collectively the "APA") and the assets described therein (the "Purchased Assets") and the assumed executory contracts and unexpired leases of nonresidential real property described on Schedule 1.1(c) to the APA (the "Assumed Agreements"); and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Motion, the relief requested therein, and the responses thereto, if any, being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if any, to the Motion having been duly noted in the record of the Sale

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion or the APA attached hereto as Exhibit A.

Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in these cases, including the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and after due deliberation and sufficient cause appearing therefore;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     The Court has jurisdiction over this matter and over the property of the Debtors, including the Purchased Assets, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     The statutory predicates for the relief sought in the Motions and the basis for the approvals and authorizations herein are (i) Bankruptcy Code sections 102, 105, 363, 365, 1123, 1141, and 1146, and (ii) Bankruptcy Rules 2002, 6004, 6006, and 9014.

E.     On December 28, 2008 (the "Petition Date"), the Debtors each filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued in possession and management of their businesses and properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

F.     As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, the Sale Procedures, the Auction, the Cure Notice,

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

the Assumed Agreements, and the Sale Hearing have been provided in accordance with Bankruptcy Code sections 102(1), 363(b), and 365, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, and in compliance with the Sale Procedures Order. No other or further notice of the Motion, the Sale Procedures, the Auction, the Sale Hearing, the Cure Notice, the Assumed Agreements, or of the entry of this Order is necessary or shall be required.

G. A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities, including, without limitation, (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Debtors' prepetition and postpetition lenders, D.E. Shaw Laminar Lending 3 (C), L.L.C., as Administrative Agent and D.E. Shaw Laminar Portfolios, L.L.C. as Lender, and Laminar Direct Capital, L.L.C. (collectively, the "Lenders"); (iii) counsel to the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee"); (d) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; (e) all entities who executed non-disclosure agreements with the Debtors in connection with a potential acquisition of any or all of the Assets or who otherwise have expressed to the Debtors an interest in purchasing the Assets; (f) all UCC-1 parties; (g) all landlords; (h) for each state in which the Debtors operate, the applicable taxing authorities; (i) the Counterparties to the Assignable Contracts and Leases; and (j) all of the Debtors' known unsecured creditors. Other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

H. The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances for them to enter into the APA, and to sell the Purchased Assets under Bankruptcy Code sections 363, 1123, and 1141, and to assume and assign the Assumed Agreements under Bankruptcy Code section 365 effective upon the Closing of a sale to the Buyer, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors.

I.     The Sale Procedures set forth in the Procedures Order were non-collusive, substantively and procedurally fair to all parties, and were the result of arm's-length negotiations between the Debtors and other parties in interest.

J.     The Debtors and their professionals have complied, in good faith, in all respects with the Procedures Order. As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing through marketing efforts and a competitive sale process conducted in accordance with the Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase some or all of the Debtors' Assets, and (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets.

K.     The Sale Procedures obtained the highest value for the Purchased Assets for the Debtors and their estates.

L.     The offer of the Buyer, upon the terms and conditions set forth in the APA, including the form and total consideration to be realized by the Debtors pursuant to the APA, (i) is the highest and best offer received by the Debtors for the Purchased Assets; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Purchased Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

M.     On or about January 16, 2009, the Court entered that Order Approving Selection of Stalking Horse, Break-Up Fee and Expense Reimbursement, and Related Relief in Connection with Sale of Assets of Debtor PoshTots, Inc. (the "Stalking Horse Order," Docket No. 200), which approved the selection of the Buyer as a stalking horse bidder and granted certain related relief. In connection with the relief requested by the Debtors and as granted by the Stalking Horse Order, the status of the Buyer's principal as an insider of the Debtors previously was disclosed.

N.    The Buyer is a buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code sections 363(m) with respect to all of the Purchased Assets. The APA was negotiated and entered into in good faith, based upon arm's-length bargaining, and without collusion or fraud of any kind. Neither the Debtors nor the Buyer has engaged in any conduct that would prevent the application of Bankruptcy Code section 363(m) or cause the application of or implicate Bankruptcy Code section 363(n) to the APA or to the consummation of the sale transaction and transfer of the Purchased Assets and Assumed Agreements to the Buyer. The Buyer is entitled to all the protections and immunities of Bankruptcy Code section 363(m).

O.    The Debtors have full corporate power and authority to execute the APA and all other documents contemplated thereby, and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the APA. No consents or approvals, other than as may be expressly provided for in the APA, are required by the Debtors to consummate such transactions.

P.    The Debtors have advanced sound business reasons for seeking to enter into the APA and to sell and/or assume and assign the Purchased Assets and the Assumed Agreements, as more fully set forth in the Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise of the Debtors' business judgment to sell the Purchased Assets and to consummate the transactions contemplated by the APA. Notwithstanding any requirement for approval or consent by any person, the transfer of the Purchased Assets to the Buyer is a legal, valid and effective transfer of the Purchased Assets.

Q.    The terms and conditions of the APA, including the consideration to be realized by the Debtors pursuant to the APA, are fair and reasonable, and the transactions contemplated by the APA are in the best interests of the Debtors' estates.

R.    Except as otherwise provided in the APA, the Purchased Assets shall be sold free and clear of all Liens, Claims, Encumbrances, and Interests, with such Liens, Claims, Encumbrances, and Interests to attach to the consideration to be received by the Debtors in the

same priority and subject to the same defenses and avoidability, if any, as before the Closing, and the Buyer would not enter into the APA to purchase the Purchased Assets otherwise. All proceeds from the sale of the Purchased Assets, including any deposit constituting a portion of the Purchase Price (the "Proceeds"), and except for the Cure Amounts as defined herein, which shall be paid as described herein, shall be paid immediately and directly into an escrow account with an escrow agent reasonably acceptable to the Lenders *and the Committee* (the "Escrow Account") with the Lenders' Liens to attach to the Proceeds to the same extent, validity, and priority as the Lenders' Liens attached to the Purchased Assets immediately prior to the Closing. The Proceeds shall remain in the Escrow Account until the Court orders the funds released. Under no circumstances shall the use of the escrowed funds under section 363 or otherwise be permitted without the consent of the Lenders in their sole and absolute discretion.

S. The transfer of the Purchased Assets to the Buyer will be a legal, valid, and effective transfer of the Purchased Assets, and, except as may otherwise be provided in the APA, shall vest the Buyer with all right, title, and interest of the Debtors to the Purchased Assets free and clear of any and all Liens, Claims, Encumbrances, and Interests. Except as specifically provided in the APA or this Order, the Buyer shall not assume or become liable for any Liens, Claims, Encumbrances, and Interests relating to the Purchased Assets being sold by the Debtors.

T. Subject to Paragraph R hereof, the transfer of the Purchased Assets to the Buyer free and clear of all Liens, Claims, Encumbrances, and Interests will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances, and Interests as all such Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever shall attach to the Proceeds of the sale of the Purchased Assets received by the Debtors in the order of their priority, with the same validity, force, and effect that they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons having Liens, Claims, Encumbrances, or Interests of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred estopped and permanently enjoined from pursuing or asserting such Liens, Claims,

Encumbrances, or Interests against the Buyer, any of its assets, property, successors or assigns, or the Purchased Assets.

U.     Subject to Paragraph R hereof, the Debtors may sell the Purchased Assets free and clear of all Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f) has been satisfied. Those (i) holders of Liens, Claims, Encumbrances, and Interests and (ii) non-debtor parties, who did not object, or who withdrew their objections, to the sale of the Purchased Assets and the Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2) in the case of the Lenders such consent being subject to the provisions of Paragraph R hereof. All objections to the Motion have been resolved or, to the extent not resolved, are hereby overrruled. Those holders of Liens, Claims, Encumbrances, and Interests who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Liens, Claims, Encumbrances, and Interests, if any, attach to the proceeds of the sale of the Purchased Assets ultimately attributable to the property against or in which they claim or may claim any Liens, Claims, Encumbrances, and Interests, with such Liens, Claims, Encumbrances, and Interests being subject to treatment as prescribed in the any plan of liquidation proposed by the Debtors or by other, separate order of this Court.

V.     Not selling the Purchased Assets free and clear of all Liens, Claims, Interests, and Encumbrances would adversely impact the Debtors' estates, and the sale of Purchased Assets other than free and clear of all Liens, Claims, Encumbrances, and Interests would be of substantially less value to the Debtors' estates.

W.     The Buyer will be acting in good faith, pursuant to Bankruptcy Code section 363(m), in closing the transactions contemplated by the APA at any time on or after the entry of this Order, and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h).

X.     The transactions contemplated under the APA do not amount to a consolidation, merger, or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates, there is not

substantial continuity between the Buyer and the Debtors, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or their estates, and the Buyer does not constitute a successor to the Debtors or their estates.

Y.      The sale of the Purchased Assets outside of a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors. The sale does not constitute a *sub rosa* chapter 11 plan.

Z.      The total consideration provided by the Buyer for the Purchased Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

AA.     Time is of the essence in consummating the Sale. In order to maximize the value of the Purchased Assets, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the APA. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rule 6004.

BB.     The Buyer shall have no obligations with respect to any liabilities of the Debtors other than as may be expressly set forth in the APA.

CC.     For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have not, in connection with offering a product or service, disclosed to any individual a policy prohibiting the transfer of "personally identifiable information" (as defined in section 101(41A) of the Bankruptcy Code) about individuals to persons that are not affiliated with the Debtors.

DD.     The Buyer as provided for under the APA has cured, or has provided adequate assurance of cure of, any default existing prior to the Closing Date, which is the effective date of assumption and assignment of the Assumed Agreements, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, under the Assumed Agreements, and has provided

compensation or adequate assurance of compensation to any non-Debtor party to such contracts or leases for any of their actual pecuniary losses resulting from any default arising prior to the Closing Date under any such Assumed Agreements, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code and as reflected on Schedule 2.3(b) of the APA attached hereto (collectively, the "Cure Amounts"). The Cure Amounts are being paid to the Debtors by the Buyer in connection with the Purchase Price and, promptly after the Closing, shall be paid by the Debtors to the counterparties to the Assumed Agreements.

EE.     As of the Closing Date, each of the Assumed Agreements will be in full force and effect and enforceable against the non-Debtor party thereto.

FF.     On or before the Closing Date, the Buyer will pay in full all undisputed Cure Amounts identified on Schedule 2.3(b) of the APA and all Cure Amounts that it is obligated to pay under the terms of the APA and that have been determined by this Court pursuant to a Final Order as of the Closing Date. Notwithstanding the foregoing, the Debtors, after consultation with the Committee and the Lenders, may elect to reject any Assumed Agreement previously designated as an Assumed Agreement within ten business days following entry of a Final Order determining the Cure Amount for such Assumed Agreement or execution of a written agreement between the Debtors, the Buyer, and the non-Debtor party to such Assumed Agreement establishing such Cure Amount, and any claims arising from such rejection shall, pursuant to section 365(g)(1) of the Bankruptcy Code, be deemed to arise immediately prior to the Petition Date.

GG.     The Debtors and the Buyer have, to the extent necessary, satisfied the requirements of sections 365(b)(1) and 365(f) of the Bankruptcy Code in connection with the Sale and the assumption and assignment of the Assumed Agreements and shall upon assignment

thereof on the Closing Date, be relieved from any liability for any breach thereof (other than the liability of the Buyer to pay Cure Amounts to the Debtors as provided in the APA on or before the Closing and the liability of the Debtors to pay the Cure Amounts promptly following the Closing to the counterparties to the Assumed Agreements).

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. The relief requested in the Motion with respect to the Sale of the Purchased Assets, the assumption and assignment of the Assumed Agreements, and related matters is granted in its entirety, subject to the terms and conditions contained herein.

2. All objections, responses, and requests for continuance concerning the Motions are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

3. Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with all applicable law and rules of Court, including 11 U.S.C. § 102(1) and Bankruptcy Rules 2002 and 6004.

4. The sale of the Purchased Assets, the terms and conditions of the APA (including all schedules and exhibits affixed thereto), the Successful Bid by the Buyer, the assumption and assignment of the Assumed Agreements effective upon the Closing of the Sale to the Buyer (except as otherwise set forth herein), and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

5.   The Sale of the Purchased Assets and the consideration provided by the Buyer under the APA is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.   The Buyer is hereby granted and is entitled to all of the protections provided to a good faith buyer under Bankruptcy Code section 363(m).

7.   Subject to the terms of the APA, the Debtors hereby are authorized to assume, perform under, consummate, and implement the terms of the APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA, this Order and Sale of the Purchased Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession any or all of the Purchased Assets or Assumed Liabilities, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA, without any further corporate action or orders of this Court.

8.   The Debtors and each other person or entity having duties or responsibilities under the APA, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the APA, to carry out all of the provisions of the APA and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the APA, and any related agreements; to take any and all actions contemplated by the APA, any related agreements or this Order; and

to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and reasonably necessary or appropriate to implement, effectuate, and consummate, the APA, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities. The secretary or any assistant secretary of the Debtors shall be, and hereby is, authorized to certify or attest to any of the foregoing actions (but no such certification or attestation shall be required to make any such action valid, binding, and enforceable). The Debtors are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the APA, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

        9.      Effective as of the Closing, (a) the sale of the Purchased Assets by the Debtors to the Buyer shall constitute a legal, valid, and effective transfer of the Purchased Assets

notwithstanding any requirement for approval or consent by any person and shall vest Buyer

with all right, title, and interest of the Debtors in and to the Purchased Assets, free and clear of

all Claims, Liens, Interests, and Encumbrances of any kind, pursuant to Bankruptcy Code section

363(f), and (b) the assumption of any Assumed Liabilities by the Buyer shall constitute a legal,

valid, and effective delegation of any Assumed Liabilities to the Buyer and shall divest the

Debtors of all liability with respect to any Assumed Liabilities.

          10.     The sale of the Purchased Assets is not subject to avoidance pursuant to

Bankruptcy Code section 363(n).

          11.     On or before the Closing Date, the Buyer shall pay its share of Transfer

Taxes, utility charges, personal property taxes or similar ad valorem obligations which the Buyer

is obligated to pay under the APA.

          12.     Except to the extent specifically provided in the APA, upon the Closing,

the Debtors shall be, and hereby are, authorized, and empowered, pursuant to Bankruptcy Code

sections 105 and 363(b), to sell the Purchased Assets to the Buyer. The sale of the Purchased

Assets shall vest the Buyer with all right, title, and interest of the Debtors to the Purchased

Assets free and clear of any and all Claims, Liens, Interests, and Encumbrances and other

liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unfiled,

scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-

contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known

or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by

agreement, understanding, law, equity or otherwise, with all such Claims, Liens, Interests, and

Encumbrances to attach only to the Proceeds of the sale with the same priority, validity, force,

and effect, if any, as they now have in or against the Purchased Assets, subject to all claims and

defenses the Debtors may possess with respect thereto; provided, however, that the Proceeds, except for the Cure Amounts, shall be paid immediately and directly into the Escrow Account with the Lenders' Liens to attach to the Proceeds to the same extent, validity and priority as the Lenders' Liens attached to the Purchased Assets immediately prior to the Closing. The Proceeds shall remain in the Escrow Account until the Court orders the funds released. Under no circumstances shall the use of the escrowed funds under section 363 or otherwise be permitted without the consent of the Lenders in their sole and absolute discretion. Following the Closing Date, no holder of any Claims, Liens, Interests, and Encumbrances in the Assets shall interfere with the Buyer's use and enjoyment of the Purchased Assets based on or related to such Claims, Liens, Interests and Encumbrances, or any actions that the Debtors may take in their chapter 11 cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the APA or this Order.

13. The provisions of this Order authorizing the sale of the Purchased Assets free and clear of Liens, Claims, Encumbrances, and Interests, other than Assumed Liabilities, shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order. However, subject to the terms of the APA the Debtors and the Buyer, and each of their respective officers, employees and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or the Buyer deem reasonably necessary or appropriate to implement and effectuate the terms of the APA and this Order. Moreover, effective as of the Closing, the Buyer, its successors and assigns, shall be designated and appointed the Debtors' true and lawful attorney and attorneys with respect to the Purchased

Assets, with full power of substitution, in the Debtors' name and stead, on behalf and for the benefit of the Buyer, its successors and assigns, to demand and receive any and all of the Purchased Assets and to give receipts and releases for and in respect of the Purchased Assets, or any part thereof, and from time to time to institute and prosecute the Debtors' name, for the benefit of the Buyer, its successors and assigns, any and all proceedings at law, in equity or otherwise, which the Buyer, its successors and assigns, may deem proper for the collection or reduction to possession of any of the Purchased Assets, and to do all acts and things with respect to the Purchased Assets that the Buyer, its successors and assigns, shall deem reasonably desirable. The foregoing powers are coupled with an interest and are and shall be irrevocable by the Debtors.

14. Upon the Closing Date, the Debtors' creditors are authorized to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances, or Interests of any kind against the Assets, as such Encumbrances may have been recorded or may otherwise exist. If any person or entity (other than the Lenders) that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances, or Interests in or against the Purchased Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances, or Interests that the person or entity has with respect to the Purchased Assets, the Debtors are hereby authorized to execute and file such statements, and empowered to perform under, all instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets prior to the Closing, and the Buyer is authorized to file such documents after Closing.

15. To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.

16. All of the Debtors' interests in the Purchased Assets to be acquired by the Buyer under the APA shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Buyer. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Purchased Assets acquired by the Buyer under the APA and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Buyer.

17. Except as otherwise provided in the APA, subject to paragraph 12 hereof upon the Closing, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Interests or Claims against the Purchased Assets, if any, as may have been recorded or may otherwise exist.

18. Except as otherwise expressly provided in the APA, all persons or entities presently on or after the Closing in possession of some or all of the Assets are directed to surrender possession of the Purchased Assets to the Buyer on the Closing Date, or at such time thereafter as the Buyer may request.

19.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Order.

20.     The Buyer has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Liabilities as set forth in the APA, and the Buyer has not purchased any of the Excluded Assets. Consequently, all persons, Governmental Units (as defined in Bankruptcy Code sections 101(27) and 101(41)) and all holders of Claims, Liens, Interests, or Encumbrances based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Buyer or the Purchased Assets to recover any Claims, Liens, Interests, or Encumbrances or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the APA. All persons holding or asserting any Interest in the Excluded Assets are hereby enjoined from asserting or prosecuting such Claims, Liens, Interests, or Encumbrances or cause of action against the Buyer or the Purchased Assets for any liability associated with the Excluded Assets.

21.     To the extent permitted under applicable law, the Buyer is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability or similar liability except as otherwise expressly provided in the APA. Except to the extent the Buyer assumes the Assumed Liabilities pursuant to the APA, neither the purchase of the Purchased Assets by the Buyer or its affiliates, nor the fact that the Buyer or its affiliates are using any of the Purchased Assets previously operated by the Debtors, will cause the Buyer or any of its affiliates to be deemed a successor in any respect to the

Debtors' businesses within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. Buyer and its affiliates shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 210 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law by virtue of the Buyer's purchase of the Purchased Assets.

22. Pursuant to Bankruptcy Code sections 105 and 363, all persons and entities, including, but not limited to, the Debtors, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, Encumbrance, or Interest of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Purchased Assets to the Buyer, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim, Encumbrance or Interest against the Buyer or any affiliate, successor or assign thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys,

employees, partners, affiliates and representatives (each of the foregoing in its individual capacity), or the Purchased Assets.

23.    Subject to the terms of the APA, the APA and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Buyer, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the APA and any related agreements.

24.    The failure specifically to include any particular provisions of the APA or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors, and the Buyer that the APA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

25.    The Debtors are hereby authorized, in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code, to (a) assume and assign to the applicable Buyer, effective upon the Closing Date (except as otherwise expressly set forth herein), the Assumed Agreements and/or to transfer, sell, and deliver to the Buyer all of Debtors' right, title and interest in and to the Assumed Agreements, free and clear of all Liens, Interests and Claims of any kind or nature whatsoever, and (b) execute and deliver to the Buyer such other documents or other instruments as may be necessary to assign and transfer the Assumed Agreements to the Buyer.

26.    The requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are hereby deemed satisfied with respect to the Assumed Agreements (subject to the "Cure Amount" procedures set forth herein).

27.     The Assumed Agreements shall be transferred to, and remain in full force and effect for the benefit of, the Buyer, without any default or event of default thereunder, notwithstanding any provision in any such Assumed Agreement (including provisions of the type described in sections 365(b)(2), (e)(1) and (f)(1) of the Bankruptcy Code) which prohibits, restricts or conditions such assignment or transfer. The non-Debtor party to each Assumed Agreement shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the Buyer shall enjoy all of the rights and benefits under each such Assumed Agreement as of the applicable Closing Date without the necessity of obtaining such non-Debtor party's written consent to the assumption and assignment thereof.

28.     The information provided by and about the Buyer is and shall be deemed to constitute "adequate assurance of future performance" under the Bankruptcy Code (including under section 365(f)(2)(B) thereof).

29.     Pursuant to section 365(k) of the Bankruptcy Code, and upon payment by the Debtors of the Cure Amounts, the Debtors and their estates shall be relieved from any liability for any breach of any Assumed Agreement after such assignment to and assumption by the Buyer on the Closing Date.

30.     All liquidated monetary defaults, claims or other obligations of the Debtors arising or accruing or relating to time periods under each Assumed Agreement prior to the assumption of such Assumed Agreement (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code section 365(b)(2)), determined in accordance with the Procedures Order, shall be fixed in the amount reflected on Schedule 2.3(b) to the APA, and any undisputed portion of such defaults, claims or other obligations shall be promptly cured and paid as provided for under the APA and this Order upon the Closing Date

or, or as soon as practicable thereafter, for any disputed portion thereof, upon the later determination of the Cure Amount.

31. Subject to the terms hereof with respect to the Cure Amounts, all defaults or other obligations of the Debtors under the Assumed Agreements arising or accruing prior to the Closing Date have been cured or shall promptly be cured by the Debtors and the Buyer, as provided for under the APA, in accordance with the terms hereof such that the Buyer and its successors and assigns shall have no liability or obligation with respect to any default or obligation arising or accruing under any Assumed Agreement on or prior to the Closing Date.

32. Upon assignment of the Assumed Agreements to the Buyer on the Closing Date, no default shall exist under any Assumed Agreement and no non-Debtor party to any Assumed Agreement shall be permitted to declare a default by the Buyer under such Assumed Agreement or otherwise take action against the Buyer as a result of any Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the Assumed Agreements, including any failure to pay any amounts necessary to cure any Debtors' defaults thereunder. Upon entry of this Order and assumption and assignment of the Assumed Agreements in accordance with the terms hereof, the Buyer shall be deemed in compliance with all terms and provisions of the Assumed Agreements.

33. Notwithstanding any other provision in this Order, upon assumption of the Assumed Agreements, the Buyer shall assume all liabilities arising under the Assumed Agreements that arise and accrue on and after the Closing Date.

34. No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the APA.

35. To the extent any provisions of this Order conflict with the terms and conditions of the APA, this Order shall govern and control.

36. This Order and the APA shall be binding upon and govern the acts of all Persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.

37. The provisions of this Order are non-severable and mutually dependent.

38. Nothing in any order of this Court or contained in any plan of reorganization or liquidation confirmed in the Chapter 11 Cases, or in any subsequent or converted cases of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, shall conflict with or derogate from the provisions of the APA or the terms of this Order.

39. Notwithstanding anything to the contrary in the APA or in Bankruptcy Rules 6004, 6006, and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the condition in Section 11.3(c) of the APA that this Order shall have become a Final Order is waived. In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close under the APA at any time, subject to the terms of the APA. In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Buyer close under the APA, the Buyer shall be deemed to

be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code section 363(m) as to all aspects of the transactions under and pursuant to the APA if this Order or any authorization contained herein is reversed or modified on appeal.

43. ~~40.~~ This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Procedures Order, and the APA in all respects and to decide any disputes concerning this Order, the APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the APA and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of all Liens, Claims, Interests, and Encumbrances. To the extent there are any inconsistencies between the terms of this Order and the APA, the terms of this Order shall control.

Dated: Feb 6, 2009

Honorable Brendan L. Shannon
United States Bankruptcy Judge

40. Promptly following entry of this Order, the Debtors shall return to drugstore.com, Inc. ("Drugstore"), the deposit of $56,000 in full without any interest, received by the Debtors from Drugstore in connection with the Auction.

41. Upon entry of this Order and return of the deposit to Drugstore as set forth in the preceding paragraph, Drugstore, on the one hand, and the Debtors, the Committee, and the Lenders, on the other hand (collectively, the "Settling Parties"), and each of the Settling Parties' respective officers, directors, members, professionals, and agents, hereby mutually release all claims and causes of action arising from or related to the Sale, the Sale Procedures, and the Auction.

42. Notwithstanding anything contained herein to the contrary, including without limitation any findings contained herein and the releases in the prior paragraph, nothing shall be deemed a (a) release of claims of the estate in favor of Andrea Edmonds or Posh Ventures, LLC, or (b)(i) limitation or modification of (ii) any judgment or findings with respect to any rights or claims of the estate against Andrea Edmonds or Posh Ventures, LLC.