# EXHIBIT A

## [the Plan]

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| eTOYS DIRECT 1, LLC, et al.,[1] | ) | Case No. 08-13412(BLS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## JOINT PLAN OF LIQUIDATION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Counsel for Debtors and Debtors in Possession:

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
Jeffrey W. Dulberg (CA Bar No. 181200)
Michael R. Seidl (Bar No. 3889)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: 302-652-4100
Facsimile: 302-652-4400

Counsel for Official Committee of Unsecured Creditors:

ARENT FOX LLP
Schuyler G. Carroll
1675 Broadway
New York, NY 10019
Telephone: 212-484-3900
Facsimile: 212-484-3990

-and-

ELLIOTT GREENLEAF
Rafael X. Zahralddin-Aravena (Bar No. 4166)
1105 Market Street, Suite 1700
Wilmington, DE 19801
Telephone: 302-384-9400
Facsimile: 302-384-9399

Dated: August 12, 2010

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: eToys Direct 1, LLC (N/A); The Parent Company (7093); BabyUniverse, Inc. (7990); Dreamtime Baby, Inc. (8047); eToys Direct, Inc. (7296); PoshTots, Inc. (8660); eToys Direct 2, LLC (N/A); eToys Direct 3, LLC (N/A); Gift Acquisition, L.L.C. (0297); and My Twinn, Inc. (1842). The address for each of the Debtors is 717 17th Street, Suite 1300, Denver, CO 80202, with the exception of PoshTots, Inc., the address for which is 5500 Cox Road, Suite M, Glenn Allen, VA 23060.

DOCS_DE:156322.8

## JOINT PLAN OF LIQUIDATION OF THE DEBTORS AND
## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtor in possession (the "Debtors") together with the Official Committee of Unsecured Creditors (the "Committee") in the Debtors' cases hereby propose the following Joint Plan of Liquidation of the Debtors and the Committee pursuant to 11 U.S.C. § 1121[2]:

### Preliminary Statement

The Plan sets forth a proposal for the satisfaction of all Claims against the Debtors. Along with the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan and a Disclosure Statement that provides information concerning the Debtors and the Plan.

The Disclosure Statement accompanying the Plan, and the exhibits thereto, include a discussion of the Debtors' history, business, results of operations and properties, the post-petition liquidation of substantially all of the Debtors' assets, a summary of the assets and liabilities of the Debtors, a summary of what Creditors and Interest Holders can expect to receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed. All Holders of Claims and Interests should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals—before voting to accept or reject the Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed.[3] If the Plan is not confirmed, the Bankruptcy Court may order the cases dismissed, or converted to liquidating cases under Chapter 7 of the Bankruptcy Code, or the Debtors or other parties in interest may propose a different plan.

The Plan proposes to substantively consolidate the Debtors' estates and to vest all of the assets of the consolidated Debtors into a single estate for distribution in accordance with the Plan.

## ARTICLE 1
## DEFINITIONS

1.1     As used in this Plan, the following terms shall have the respective meanings specified below. Unless otherwise indicated, the singular shall include the plural.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Article 1 of this Plan.
[3] Interest Holders will receive nothing under the Plan, and therefore, the Class of Interests is deemed to have rejected the Plan. Accordingly, acceptances are not being solicited from the Holders of Interests.

1.2 **"Administrative Claim"** shall mean a Claim under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Cases, including, without limitation, any actual and necessary expenses of operating the business of the Debtors or preserving the estates, and any and all fees and expenses of Professionals to the extent allowed by the Bankruptcy Court under Sections 330, 331, or 503 of the Bankruptcy Code.

1.3 **"Allowed Claim"** or **"Allowed [ ] Claim"** shall mean: (a) any Claim, proof of which is/was filed with the Bankruptcy Court on or before the applicable Bar Date, or which has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been filed within the applicable period of limitation (if any) for objection to Claims fixed by the Bankruptcy Court, or as to which any objection has been determined by an order or judgment of the Bankruptcy Court (allowing such Claim in whole or in part) that is no longer subject to appeal or certiorari proceedings, and as to which no appeal or certiorari proceeding is pending, or (b) a Claim that is allowed (i) in a Final Order or (ii) pursuant to the terms of the Plan.

1.4 **"Avoidance Actions"** mean all claims and causes of action that the Debtors or the Committee have or had the power to assert pursuant to any or all of Sections 510, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

1.5 **"Assets"** means any and all real property or personal property assets, rights or interests of Debtors, whether tangible or intangible, and any proceeds realized therefrom, including without limitation, all cash of the Debtors and any right, claim or cause of action, belonging to the Debtors or their estates or to the Committee.

1.6 **"Ballot"** shall mean the form or forms of ballot that will be distributed along with the Disclosure Statement to Holders of Allowed Claims in classes that are Impaired under the Plan and entitled to vote, with which the Holders of impaired Claims may use to vote to accept or reject the Plan.

1.7 **"Bankruptcy Code"** shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101 et. seq., as now in effect or hereafter amended with regard to the Chapter 11 Cases.

1.8 **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Delaware.

1.9 **"Bankruptcy Rules"** shall mean the means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

1.10 **"Bar Date"** shall mean the date (or dates) set by the Bankruptcy Court as the last day for filing proofs of Claim and Administrative Claims against the Debtors.

1.11 **"Business Day"** shall mean any day <u>other</u> than a Saturday, Sunday, legal holiday (as such term is defined in Bankruptcy Rule 9006), or any other day that the Bankruptcy Court is closed.

1.12 **"Cash"** shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.13 **"Chapter 11 Cases"** shall mean the above-captioned Chapter 11 Cases pending for the Debtors.

1.14 **"Claim"** shall mean a claim as defined in Section 101(5) of the Bankruptcy Code, or any portion thereof.

1.15 **"Claims Agent"** means Omni Management Group, LLC, which was appointed as the Debtors' claims, notice, and balloting agent.

1.16 **"Class"** shall mean a category of Claims or Interests that are substantially similar in nature to each other, as classified pursuant to the Plan.

1.17 **"Committee"** shall mean the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee on January 8, 2009.

1.18 **"Confirmation"** shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.19 **"Confirmation Date"** shall mean the date of entry of an order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

1.20 **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.21 **"Creditor"** shall mean any person or entity having a Claim against the Debtors, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Debtors' estates of any kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

1.22 **"Debtors"** shall mean, collectively, eToys Direct 1, LLC; The Parent Company; BabyUniverse, Inc.; Dreamtime Baby, Inc.; eToys Direct, Inc.; PoshTots, Inc.; eToys Direct 2, LLC; eToys Direct 3, LLC; Gift Acquisition, L.L.C.; and My Twinn, Inc. The Parent Company is the direct or indirect 100% shareholder of each of the Debtors. The Parent Company is the direct 100% shareholder of debtors BabyUniverse, Inc.; Dreamtime Baby, Inc.; eToys Direct, Inc.; and PoshTots, Inc. Etoys Direct, Inc., in turn, is the 100% shareholder of eToys Direct 1, LLC; eToys Direct 2, LLC; eToys Direct 3, LLC; Gift Acquisition, L.L.C.; and MyTwinn, Inc.

1.23   **"Debtors in Possession"** shall mean the Debtors in their capacity and with the status and rights conferred by Sections 1107 and 1108 of the Bankruptcy Code.

1.24   **"Disclosure Statement"** shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with Section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or modifications thereof.

1.25   **"Disputed Claim" or "Disputed [   ] Claim"** shall mean any Claim (i) as to which an objection, unless withdrawn, has been interposed and (ii) that has not been allowed or disallowed pursuant to a Final Order.

1.26   **"Effective Date"** shall mean the date designated by the Debtors in a notice filed with the Bankruptcy Court, which is at least eleven days after the date on which each of the conditions set forth in Section 8.1 of the Plan have been satisfied or waived (if waivable).

1.27   **"Entity"** shall have the meaning set forth in Section 101 of the Bankruptcy Code.

1.28   **"Final Order"** shall mean an order entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (i) no appeal, certiorari proceeding, or other review or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review or rehearing has expired.

1.29   **"General Unsecured Claim"** shall mean any Claim against the Debtors other than an Administrative Claim, Priority Tax Claim, Priority Claim, or Secured Claim.

1.30   **"Holder"** means an Entity holding a Claim or Interest.

1.31   **"Intercompany Claim"** means a Claim held by any of the Debtors against any of the other Debtors.

1.32   **"Interest"** shall mean, with respect to any of the Debtors, any equity interest therein.

1.33   **"Litigation"** means the interest of the Debtors, the Plan Administrator, or the Committee, as applicable, in any and all claims, rights and causes of action that have been or may be commenced by the Debtors, the Plan Administrator, or the Committee, as applicable. Litigation includes, without limitation, any: (i) Avoidance Action; (ii) any causes of actions against Ernst & Young LLP and any of its officers or directors; (iii) any causes of action against Posh Ventures, LLC, its affiliates or subsidiaries and its officers or directors. (iv) action for the turnover of property to the Debtors, the Plan Administrator, or the Committee, as applicable; (v) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors, the Plan Administrator, or the Committee, as applicable; (vi) for compensation for damages incurred by the Debtors; and (vii) equitable subordination actions against Creditors.

1.34    **"Person"** means a natural person or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

1.35    **"Petition Date"** shall mean December 28, 2008, the date upon which the Debtors each filed a petition under Chapter 11 of the Bankruptcy Code.

1.36    **"Plan"** shall mean this Joint Plan of Liquidation of the Debtors and the Committee, all exhibits hereto, and any amendments or modifications hereof.

1.37    **"Plan Administrator"** shall mean Steven Sass or such successor thereto approved by the Bankruptcy Court in the Confirmation Order as the representative of the estates for purposes of administering the Plan.

1.38    **"Plan Expenses"** shall mean all actual and necessary costs and expenses to be incurred after the Effective Date in connection with the administration of the Plan at the direction of the Plan Administrator, including the fees and expenses of the Plan Administrator and any professionals retained by the Plan Administrator.

1.39    **"Plan Objection Deadline"** shall mean the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

1.40    **"Post-Confirmation Debtors"** shall mean the Debtors in their post-Effective Date status as provided for in this Plan.

1.41    **"Priority Claim"** shall mean any Claim against the Debtors other than an Administrative Claim or Priority Tax Claim entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

1.42    **"Priority Tax Claim"** shall mean any Claim for taxes against the Debtors, including without limitation any interest and penalties due thereon, entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.43    **"Professionals"** shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.44    **"Property"** means all property of the Debtors' estates of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtors, or acquired by the Debtors' estates, as defined in section 541 of the Bankruptcy Code.

1.45 **"Pro Rata"** means, as of any certain date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.46 **"Reserve Fund"** shall mean the segregated interest bearing account(s) into which all reserved cash provided for in the Plan shall be deposited on the Effective Date, or as soon thereafter as is practicable.

1.47 **"Schedules"** shall mean the Debtors' Schedules of Assets and Liabilities filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007 as they may be amended from time to time.

1.48 **"Secured Claim"** means all or that portion of a debt existing on the Petition Date, as finally allowed and approved by the Bankruptcy Court, to the extent that such debt is not greater than the value of the assets of the Debtors that the Bankruptcy Court finds are valid security for such debt.

1.49 **"Unimpaired"** means any Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.50 **"Voting Deadline"** means the deadline established by Final Order of the Bankruptcy Court for receipt of Ballots voting to accept or reject the Plan.

1.51 **"Voting Record Date"** means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan. Pursuant to Bankruptcy Rules 3017(d) and 3018(a). The Voting Record Date shall be the date of entry of the Bankruptcy Court's order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

1.52 All terms not expressly defined herein shall have the respective meanings given such terms in Section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code, the Plan, or the Disclosure Statement. Defined terms importing the plural only shall also include the singular where the context requires. Unless otherwise specified herein, any reference to an Entity as a Holder of a Claim includes that Entity's successors, assigns, and affiliates. The rules of construction set forth in Section 102 of the Bankruptcy Code will apply. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

# ARTICLE 2

## PROVISIONS FOR PAYMENT OF ALLOWED
## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

2.1 Administrative Claims and Priority Tax Claims are not classified in this Plan. The treatment of and consideration to be received by Holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article II of the Plan shall be in full and complete satisfaction, settlement, release and discharge of such Claims. The Debtors' obligations in respect of such Allowed Administrative and Priority Tax Claims shall be satisfied in accordance with the terms of this Plan.

2.2 <u>Treatment of Administrative Claims</u>. Except to the extent the Holder of an Allowed Administrative Claim agrees otherwise, each Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount thereof, without interest, in Cash, as soon as practicable after the later of (i) the Effective Date or (ii) the date on which such Claim becomes an Allowed Claim.

2.3 <u>Treatment of Priority Tax Claims</u>. Each Holder of an Allowed Priority Tax Claim will be paid in respect of such Allowed Priority Tax Claim either (a) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (i) the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Claim or (b) such lesser amount as the Holder of an Allowed Priority Tax Claim and the Debtors might otherwise agree or (c) at the election of the Post-Confirmation Debtors, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, in Cash, in up to twenty-four equal quarterly installments (and in such event, interest shall be paid on the unpaid portion of such Allowed Priority Tax Claims at a rate to be agreed to by the Debtors and the appropriate governmental unit, or, if they are unable to agree, as determined by the Bankruptcy Court), commencing as soon as practicable after the later of (i) the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Claim.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1 Administrative Claims and Priority Tax Claims are unclassified. For purposes of this Plan, all other Claims and Interests are classified as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Claims | Impaired | Entitled to Vote |
| Class 2 – Secured Claims (if any)[4] | Unimpaired | Not Entitled to Vote |
| Class 3 – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 – Equity Interests | Impaired | Not Entitled to Vote |

---

[4] Each Holder of a Class 2 Claim constitutes a separate subclass under the Plan.

# ARTICLE 4

## TREATMENT OF CLAIMS AND INTERESTS

4.1    The Debtors' obligations in respect of such Claims and Interests shall be satisfied in accordance with the terms of this Plan.

4.2    <u>Treatment of Class 1 Claims - Priority Claims</u>.  Class 1 Claims are impaired. Each Holder of an Allowed Class 1 Claim shall receive either (a) payment in full in Cash as soon as practicable after the later of (i) the Effective Date, and (ii) the date on which such Claim becomes an Allowed Claim or (b) as otherwise agreed by the Holder of such Allowed Class 1 Claim. The Holders of Claims in this Class are entitled to vote.

4.3    <u>Treatment of Class 2 Claims - Secured Claims</u>.  Class 2 Secured Claims are Unimpaired.  The Debtors believe that all valid Secured Claims were paid in full or otherwise released or satisfied during the course of the Chapter 11 Cases and that there are no valid Allowed Claims in this class.  To the extent there are any Claims in this class, each such Claim shall be deemed to be a separate subclass.  To the extent there are any Allowed Class 2 Claims, at the option of the Debtors, either (i) the legal, equitable, and contractual rights to which such Claim entitles the Holder thereof shall be left unaltered, (ii) the Claim shall be left Unimpaired in the manner described in Section 1124(2) of the Bankruptcy Code, or (iii) the Holder of such Claim shall receive or retain the collateral securing such Claim.  The Holders of Claims in this Class, if any, are not entitled to vote.

4.4    <u>Treatment of Class 3 Claims - General Unsecured Claims</u>.  Class 3 General Unsecured Claims are impaired.  Each Holder of an Allowed Class 3 Claim shall receive in respect of such Claim its Pro Rata distribution of the liquidated assets of the estates after the payment or reserve for Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, and Plan Expenses. The Holders of Claims in this Class are entitled to vote.

4.5    <u>Treatment of Class 4 Interests</u>.  Class 4 Interests are impaired.  The Holders of Class 4 Interests shall receive no distribution.  On the Effective Date, all Class 4 Interests shall be deemed canceled, null and void, and of no force and effect.  The Holders of Class 4 Interests are deemed to reject the Plan and are not entitled to vote

4.6    <u>Voting Classes.</u>  Each Holder of an Allowed Claim in Class 1 and in Class 3 is entitled to vote either to accept or to reject the Plan.  Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

4.7    <u>Acceptance by Impaired Classes</u>.  An Impaired Class of Claims shall have accepted the Plan if: (a) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed

Claims actually voting in such Class have voted to accept the Plan. Class 2 is deemed to have accepted the Plan and is not entitled to vote thereon.

4.8 <u>Presumed Rejection of Plan</u>. The Holders of Class 4 Interests shall not receive any distributions under the Plan and are therefore deemed to reject the Plan and are not entitled to vote.

4.9 <u>Nonconsensual Confirmation</u>. Because Class 4 is deemed to reject the Plan by operation of law, the Debtors will request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code. Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, the Debtors reserve the right to seek confirmation of the Plan over such rejection pursuant to section 1129(b) of the Bankruptcy Code.

4.10 <u>How to Vote</u>. A form of Ballot is being provided to Creditors in Class 1 and in Class 3 that hold Allowed Claims by which Creditors in such Class may vote their acceptance or rejection of the Plan. The Ballot for voting on the Plan gives you one important choice to make with respect to the Plan—you can vote <u>for</u> or <u>against</u> the Plan. To vote on the Plan, please complete the Ballot, as indicated thereon by, (1) indicating on the enclosed Ballot that (a) you accept the Plan or (b) you reject the Plan and (2) signing your name and mailing the Ballot in the envelope provided for this purpose. The Claims Agent will count the Ballots.

IN ORDER TO BE COUNTED, BALLOTS MUST BE COMPLETED, SIGNED AND RECEIVED NO LATER THAN 4:00 P.M. PREVAILING EASTERN TIME ON AUGUST 6, 2010, AT THE FOLLOWING ADDRESS:

If by first class mail, overnight mail, or hand delivery:

eToys Direct 1, LLC—Ballot Processing
c/o Omni Management Group LLC
16161 Ventura Blvd.
Suite C, PMB 439
Encino, CA 91436-2522

**DO NOT SEND YOUR BALLOT VIA FACSIMILE OR E-MAIL.**

IF YOUR BALLOT IS NOT PROPERLY COMPLETED, SIGNED AND RECEIVED AS DESCRIBED, IT WILL NOT BE COUNTED. IF YOUR BALLOT IS DAMAGED OR LOST, YOU MAY REQUEST A REPLACEMENT BY ADDRESSING A WRITTEN REQUEST TO THE ADDRESS SHOWN ABOVE. FACSIMILE OR ELECTRONICALLY SUBMITTED BALLOTS WILL NOT BE COUNTED.

# ARTICLE 5

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1 <u>Corporate Action</u>. On the Effective Date and automatically and without further action, (i) each existing member of the Board of Directors of the Debtors will resign or be terminated by the Plan Administrator and (ii) the Plan Administrator shall be deemed the sole shareholder, officer, and director of the Post-Confirmation Debtors. The Plan will be administered by the Plan Administrator, and all actions taken thereunder in the name of the Post-Confirmation Debtors shall be taken through the Plan Administrator.

5.2 <u>Plan Administrator</u>. On the Effective Date, the Plan Administrator shall begin acting for the Post-Confirmation Debtors in the same fiduciary capacity as applicable to a board of directors, subject to the provisions hereof. The Plan Administrator shall be compensated at the rate of $450 per hour and may be paid without further order of the Bankruptcy Court. The Plan Administrator shall be entitled to reimbursement for his actual, reasonable, and necessary expenses incurred in connection with the performance of his duties, without the need for further Bankruptcy Court approval. The Plan Administrator shall not be liable for any action he takes or omits to take that he believes in good faith to be authorized or within his rights or powers, absent gross negligence or willful misconduct on his/her part. All distributions to be made to Creditors under the Plan shall be made by the Plan Administrator, who shall deposit and hold all Cash in trust for the benefit of Creditors (including Professionals) receiving distributions under the Plan. The duties and powers of the Plan Administrator shall include the following:

(a) To exercise all power and authority that may be exercised, to commence all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtors or the Committee prior to the Effective Date) that may be commenced, and to take all actions that may be taken by any officer, director, or shareholder of the Post-Confirmation Debtors with like effect as if authorized, exercised, and taken by unanimous action of such officers, directors, and shareholders, including consummating the Plan and all transfers thereunder on behalf of the Post-Confirmation Debtors;

(b) To maintain all accounts, make distributions, and take other actions consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Post-Confirmation Debtors;

(c) To take all steps necessary to terminate the corporate existence of the Debtors;

(d) To prosecute objections to Claims and compromise or settle any Claims (Disputed or otherwise);

(e) To prosecute any and all Litigation and compromise or settle any Litigation;

(f) To employ and compensate any and all such professionals as the Plan Administrator, in his sole discretion, deems reasonably necessary to perform his duties under the Plan without further order of the Bankruptcy Court; and

(g)    To take all other actions not inconsistent with the provisions of the Plan that the Plan Administrator deems reasonably necessary or desirable in connection with the administration of the Plan, including, without limitation, filing all motions, pleadings, reports, and other documents in connection with the administration and closing of the Chapter 11 Cases.

5.3    <u>Resignation, Death, or Removal</u>. The Plan Administrator may be removed by the Bankruptcy Court upon application for good cause shown.  In the event of the resignation, removal, death, or incapacity of the Plan Administrator, the Committee shall be deemed reconstituted for the sole purpose of designating another Person to become Plan Administrator, subject to Bankruptcy Court approval, and thereupon the successor Plan Administrator without any further act shall become fully vested with all of the rights, powers, duties, and obligations of his or her predecessor.

5.4    <u>Winding Up Affairs</u>.  Following the Confirmation Date, the Post-Confirmation Debtors shall not engage in any business activities or take any actions, except those necessary to effectuate the Plan and wind up the affairs of the Debtors.  On and after the Effective Date, the Plan Administrator may, in the name of the Post-Confirmation Debtor, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Plan Administrator may, without application to or approval of the Bankruptcy Court, pay the charges that he or she incurs after the Effective Date for professional fees and expenses that, but for the occurrence of the Effective Date, would constitute Allowed Administrative Claims.

5.5    <u>Release of Liens</u>.  Except as otherwise provided in the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens or other security interests against the Property of the Debtors' estates shall be released, and all the right, title, and interest of any Holder of such mortgages, deeds of trust, liens, or other security interests shall revert to the Post-Confirmation Debtors and their successors and assigns.

5.6    <u>Rights of Actions</u>.  On the Effective Date, any right, claim or cause of action, belonging to the Debtors or their estates or to the Committee against any Person or Entity, including without limitation, any Litigation, and including specifically preference actions that, by agreement of the Debtors and the Committee approved by the Bankruptcy Court on June 5, 2009, were previously assigned to the Committee shall be vested in and retained by the Post-Confirmation Debtors.  The Plan Administrator shall pursue, settle, or release all reserved Litigation, as appropriate, in accordance with the best interest of and for the benefit of the Creditors entitled to receive distributions under the Plan.

5.7    <u>Professional Fees and Expenses</u>.

(a) Each Professional retained or requesting compensation in the Chapter 11 Cases, pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code, in connection with fees incurred prior to the Effective Date shall file an application for allowance of final

compensation and reimbursement of expenses in the Chapter 11 Case before the forty-fifth (45th) day after the Effective Date. Objections to such applications may be filed on or before the sixty-fifth (65th) day after Effective Date.

(b) Professionals that perform post-Confirmation Date services for the Post-Confirmation Debtors or the Plan Administrator shall provide monthly invoices to the Plan Administrator describing the services rendered and the fees and expenses incurred in connection therewith, on or before the 20th day following the end of the calendar month during which such services were performed. Professional Persons who tender such invoices shall be paid by the Plan Administrator for such services from the Plan Expense Reserve Fund created under Section 6.1 of the Plan on or after the date that is fifteen (15) days after the submission to the Plan Administrator by such Professional Persons of said monthly invoices, unless, within said fifteen (15) day period, a written objection to said payment is made, in which event such payment shall be made only upon either (a) agreement of the parties or (b) Order of the Bankruptcy Court.

5.8    Dissolution of Committee. Upon the occurrence of the Effective Date, the Committee shall be dissolved, and each individual member and any retained Professional shall be discharged from any further activities in the Chapter 11 Cases. The professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for services rendered or expenses incurred after the Effective Date, except for reasonable fees for (i) services rendered, and actual and necessary expenses incurred, in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed and served after the Effective Date for services provided prior to the Effective Date or (ii) services rendered, and actual and necessary expenses incurred, in connection the selection of any successor Plan Administrator pursuant to Section 5.3 of the Plan.

5.9    Dissolution. As soon as practicable after the Effective Date, the Debtors shall be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith, provided, however, that the Plan Administrator shall be authorized to file the Debtors' final tax returns and shall be authorized to file and shall file with the official public office for keeping corporate records in the Debtors' states of incorporation a certificate of dissolution or equivalent document. From and after the Effective Date, the Debtors (i) for all purposes shall be deemed to have withdrawn their business operations from any state in which there were previously conducting or are registered or licensed to conduct their business operations, and the Debtors shall not be required to file any document, pay any sum or take any other action, in order to effectuate such withdrawal, (ii) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

5.10    On or as soon as practicable after the Effective Date, the Post-Confirmation Debtors and the Plan Administrator may obtain a fidelity bond or similar insurance in the estimated amount of the Assets on the Effective Date. In addition, the Plan Administrator may obtain (if available) directors' and officers' liability insurance or errors and omission insurance (or equivalent insurance), provided that such insurance is available at a reasonable price.

# ARTICLE 6

## DISTRIBUTIONS

6.1 <u>Reserve for Plan Expenses</u>. Prior to making any distributions, the Plan Administrator shall set aside, deduct and reserve an amount of Cash equal to the estimated amount of Plan Expenses. Any Cash in such Plan Expense reserve that the Plan Administrator deems to be excess prior to the closing of the Chapter 11 Case shall be distributed to Holders of Allowed Claims and Interests pursuant to Article 4 of the Plan.

6.2 <u>Objections to Claims</u>. Objections to Claims shall be filed with the Bankruptcy Court and served upon affected Creditors no later than one hundred twenty (120) days after the Effective Date, <u>provided, however</u>, that this deadline may be extended by the Bankruptcy Court upon motion of the Plan Administrator. Notwithstanding the foregoing, in the event that a party filing any Claim after the applicable Bar Date shall obtain the written consent of the Plan Administrator to file such Claim late or obtains an order of the Bankruptcy Court upon notice to the Plan Administrator that permits the late filing of the Claim, then the Plan Administrator and Post-Confirmation Debtors shall have one hundred twenty (120) days from the date of such written consent or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Plan Administrator. Subject to Bankruptcy Court approval, objections to Claims may be litigated to judgment, settled, or withdrawn by the Plan Administrator consistent with Article 5.2 of this Plan.

6.4 <u>Distributions on Disputed Claims</u>. Distributions with respect to and on account of Disputed Claims will be made as soon as practicable after an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order rendering such Claim and Allowed Claim, provided that (a) the applicable Creditor shall not receive interest on its Allowed Claim, despite anything contained herein to the contrary, from the date the objection is filed and served to the date of allowance of such Claim and (b) nothing herein shall require the Plan Administrator to make a distribution other than in accordance with Article 6.1 of this Plan.

6.5 <u>Disputed Claim Reserves</u>. On and after the Effective Date, the Plan Administrator shall establish and maintain reserves for all Disputed Claims. For purposes of establishing a reserve, Cash will be set aside equal to the amount that would have been distributed to the Holders of Disputed Claims in such Class had their Disputed Claims been deemed Allowed Claims on the Effective Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Plan Administrator. If, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order or by settlement by the Plan Administrator, the relevant portion of the Cash held in reserve therefor shall be distributed by the Plan Administrator to the Creditor. The balance of such Cash, if any, remaining after all Disputed Claims have been resolved, shall be distributed Pro Rata to all Holders of Allowed Claims in accordance with Article 4 of the Plan. No payments or distributions shall be made with respect to a Claim which is a Disputed Claim pending the resolution of the dispute by settlement or Final Order.

6.6    <u>Unclaimed Property</u>. Within forty (40) days after any distribution, the Plan administrator shall file with the Bankruptcy Court and serve upon all parties requesting notice a report of undeliverable distributions. If any distribution remains unclaimed for a period of sixty (60) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled thereto, or if such distribution is returned to the Plan Administrator by the United States Postal Service marked as undeliverable, such unclaimed property shall be forfeited by such Holder absent further order of the Bankruptcy Court. Furthermore, all right, title and interest in and to the unclaimed property shall be held in reserve by the Plan Administrator to be distributed to other Creditors in accordance with this Plan. Any distribution that remains unclaimed for a period of sixty (60) days after the Plan Administrator's making of the final distribution under the Plan shall, after satisfaction of any accrued but unpaid Plan Expenses, be contributed by the Plan Administrator to a charitable organization to be selected by the Plan Administrator.

6.7    <u>Withholding Taxes</u>. Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes. Allowed Claims of Holders otherwise entitled to receive a distribution under the Plan but who fail to provide a complete IRS W-9 form within thirty (30) days after request is made by the Plan Administrator shall be entitled to no distribution without further order of the Bankruptcy Court; provided, however, that where any such Holder would be entitled to receive a distribution of $10,000 or more, the Plan Administrator shall seek an order of the Bankruptcy Court expunging the Claim.

6.8    <u>Fractional Cents</u>. Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

6.9    <u>Payments of Less than Twenty-Five Dollars</u>. If a cash payment otherwise provided for by this Plan with respect to an Allowed Claim or Interest would be less than twenty-five ($25.00) dollars (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Plan Administrator shall not be required to make such payment and such funds shall be otherwise distributed to Holders of Allowed Claims in accordance with Article 4 of the Plan. The Plan Administrator may decide to make a charitable donation with undistributed funds if in the reasonable judgment of the Plan Administrator the cost of calculating and making the final distribution of the remaining distributable funds is excessive in relation to the benefits to Creditors who would otherwise be entitled to such funds, and the Claims of any such Holders shall be entitled to no further distribution without further order of the Bankruptcy Court.

6.10    <u>Setoffs</u>. Except as otherwise provided for herein, the Plan Administrator may, but shall not be required to, set off against any Claim and the payments to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or their estates may have against the Creditor, but neither the failure to do so nor the allowance of a Claim

hereunder shall constitute a waiver or release by the Debtors or their estates of any claim it may have against the Creditor.

## ARTICLE 7

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

7.1     Any and all pre-petition leases or executory contracts not previously rejected by the Debtors, unless specifically assumed pursuant to order(s) of the Bankruptcy Court prior to the Confirmation Date or the subject of a motion to assume or assume and assign pending on the Confirmation Date, shall be deemed rejected by the Debtors on the Confirmation Date; *provided, however,* that nothing in this Article shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and their estates.

7.2     All proofs of claim with respect to claims arising from the rejection of executory contracts or leases shall, unless another order of the Bankruptcy Court provides for an earlier date, be filed with the Bankruptcy Court within thirty (30) days after the mailing of notice of entry of the Confirmation Order.

## ARTICLE 8

## CONDITIONS PRECEDENT EFFECTIVENESS OF THE PLAN

8.1     <u>Conditions to Consummation</u>.  The Plan shall not become effective unless and until each of the following conditions has been satisfied:

(a)     The Bankruptcy Court shall have entered the Confirmation Order;

(b)     The Confirmation Order shall have become a Final Order; and

(c)     the Debtors have reasonably determined that the assets of the estates will be sufficient to satisfy all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Claims, and any Allowed Secured Claims and to fund the Plan Expense Reserve Fund and the Disputed Claim reserve.

In the event that the Plan has not become effective on or before 180 days after the Confirmation Date, the Debtors shall file and serve on the Office of the United States Trustee a status report.

8.2     <u>Waiver of Conditions</u>.  The Debtors, in their sole discretion, may at any time, without notice or authorization of the Bankruptcy Court, waive the conditions set forth in Section 8.1(b) above.  The failure of the Debtors to satisfy or waive such condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtors).  The Debtors reserve the right to assert that any appeal from the Confirmation Order shall be moot after consummation of the Plan.

8.3     Effect of Failure of Condition. In the event that the condition specified in Section 8.1(b) of the Plan has not occurred or been waived on or before ninety (90) days after the Confirmation Date, the Confirmation Order may be vacated upon order of the Bankruptcy Court after motion made by the Debtors or any party in interest.

8.4     Substantive Consolidation Order. The Plan shall serve as a motion seeking entry of an order substantively consolidating these Chapter 11 Cases for distribution and voting purposes. Unless an objection to substantive consolidation is made in writing by any Creditor affected by the Plan as herein provided on or before the Plan Objection Deadline, an order substantively consolidating these Chapter 11 Cases for distribution and voting purposes may be entered by the Bankruptcy Court, which order may be the Confirmation Order. In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, coincide with the Confirmation Hearing.

8.5     Effect/Extent of Substantive Consolidation. In effectuation of such substantive consolidation, on the Effective Date: (a) no Distributions will be made under the Plan on account of the Intercompany Claims; (b) the guarantees of the Debtors will be deemed eliminated so that any Claim against the Debtors and any guarantee thereof executed by any Debtor and any joint and several liability of the Debtors with one another will be deemed to be one obligation of these Debtors; (c) each and every Claim against the Debtors will be deemed asserted as a single Claim against the Debtors as a whole, and will be treated in the same Class regardless of the Debtor; and (d) all distributions on account of Allowed Claims will be made from The Parent Company. Additionally, notwithstanding the substantive consolidation herein, substantive consolidation shall not affect the obligation of each and every one of the Debtors under 28 U.S.C. § 1930(a)(6) until a particular case is closed, converted, or dismissed.

8.6     Reservation of Rights. The Debtors reserve the right at any time up to the conclusion of the Confirmation Hearing to withdraw their request for substantive consolidation of these Chapter 11 Cases, to seek Confirmation of the Plan as if there were no substantive consolidation, and to seek Confirmation of the Plan with respect to one Debtor even if Confirmation with respect to the other Debtors is denied.

## ARTICLE 9

## RETENTION OF JURISDICTION

9.1     Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Plan Administrator, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)     Claims. To determine the allowability, classification, or priority of Claims against the Debtors upon objection by the Plan Administrator or any other party in interest.

(b)     Injunction, etc.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Entity.

(c)     Professional Fees.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before or after the Effective Date, as provided for in the Plan.

(d)     Dispute Resolution.  To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of distributions thereunder, including, without limitation, any dispute concerning payment of professional fees and expenses of the Plan Administrator.

(e)     Leases and Executory Contracts.  To determine any and all motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and to determine the allowance of any Claims resulting from the rejection of executory contracts and unexpired leases.

(f)     Actions.  To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Chapter 11 Cases, including any remands.

(g)     Litigation.  To determine any and all "Litigation" as defined under Section 1.33, including, but not limited to, any causes of action against Ernst & Young LLP and its officers and directors, and Posh Ventures, LLC, and any of its affiliates or subsidiaries and its officers or directors.  *Provided, however,* that nothing in this Article 9 shall limit or in any way impact any rights Ernst & Young LLP may have to arbitration of any Claim asserted against Ernst & Young LLP.

(h)     General Matters.  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

(i)     Plan Modification.  To modify the Plan under Section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes.

(j)     Aid Consummation.  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code.

     (k)    <u>Implementation of Confirmation Order</u>. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated.

     (l)    <u>Final Decree</u>. To enter a Final Decree closing these Chapter 11 Cases.

## ARTICLE 10

## <u>MISCELLANEOUS PROVISIONS</u>

     10.1    <u>Pre-Confirmation Modification</u>. The Plan may be altered, amended or modified by the Debtors before the Confirmation Date as provided in Section 1127 of the Bankruptcy Code.

     10.2    <u>Post-Confirmation Immaterial Modification</u>. The Plan Administrator and/or Post-Confirmation Debtors may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims and Interests, insofar as it does not materially and adversely affect the interest of Holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of this Plan.

     10.3    <u>Post-Confirmation Material Modification</u>. The Plan may be altered or amended after the Confirmation Date by the Plan Administrator and/or Post-Confirmation Debtors in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, provided that such alteration or modification is made after a hearing as provided in Section 1127 of the Bankruptcy Code.

     10.4    <u>Withdrawal or Revocation of the Plan</u>. The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtors revoke or withdraw the Plan, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred.

     10.5    <u>Successors and Assigns</u>. The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entities.

     **10.6    <u>Exculpation</u>. Except as otherwise provided by the Plan or the Confirmation Order or other Final order of the Bankruptcy Court, on the Effective Date, the Debtors, certain of the Debtors' officers and directors expressly limited to Charles Goodrich, Philip Manoff and Michael Miyaki, the Committee and its individual members, the Plan Administrator, and their respective bankruptcy professionals including attorneys and financial advisors, and their successors and assigns, shall be deemed released by each of them against the other of and from any claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of, the Chapter 11 Cases, including, without limiting the generality of the foregoing, all sales of assets, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan**

or the property to be distributed under the Plan, except for acts or omissions that constitute willful misconduct, gross negligence or fraud, and all such Persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.

10.7     Injunction. **Except as otherwise provided in the Plan, on and after the Confirmation Date, all Entities who have held, hold or may hold Claims against the Debtors or Interests in the Debtors are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors' Estates, the Post-Confirmation Debtors, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities, including without limitation the Plan Administrator, or any property of any such transferee or successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against the Debtors' Estates, the Post-Confirmation Debtors, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Entities, including without limitation the Plan Administrator; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors' Estates, the Post-Confirmation Debtors, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Entities, including without limitation the Plan Administrator; (d) asserting any right of setoff, of any kind, directly or indirectly, against any obligation due the Debtors' Estates, the Post-Confirmation Debtors, any of their property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Entities, including without limitation the Plan Administrator; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan.** *Provided, however,* that this section 10.7 shall not in any way limit Ernst & Young LLP's right to respond (including, without limitation, the right assert counterclaims or setoff) to Litigation or Claims initiated by or asserted by the Post-Confirmation Debtors, the Plan Administrator or any other party entitled to pursue the Debtors' Claims.

10.8     Cramdown. To the extent any Impaired Class of Claims or Interest Holders entitled to vote on the Plan votes to reject the Plan, the Debtors reserves the right to request confirmation of the Plan under Section 1129(b) of the Bankruptcy Code with respect to such Class(es).

10.9     Governing Law. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.

10.10 <u>United States Trustee Fees</u>. All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtors on or before the Effective Date. Thereafter, the Plan Administrator shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing these Chapter 11 Cases.

10.11 <u>Notices</u>. Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

To: The Post-Confirmation Debtors
and Plan Administrator:

Steven D. Sass LLC
Plan Administrator
P.O. Box 45
Clarksville, MD 21029
Email: stevendsassllc@gmail.com
lynnksmalley@aol.com

With a copy to:

Pachulski Stang Ziehl & Jones LLP
Laura Davis Jones
Jeffrey W. Dulberg
Michael R. Seidl
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Email: ljones@pszjlaw.com
jdulberg@pszjlaw.com
mseidl@pszjlaw.com

To: The Committee:

ARENT FOX LLP
Schuyler G. Carroll
1675 Broadway
New York, NY 10019
Telephone: 212-484-3900
Facsimile: 212-484-3990
Email: Schuyler.Carroll@arentfox.com

10.12 <u>Non-Voting Equity Securities</u>. To the extent applicable, the Debtors shall comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code.

10.13 <u>Retiree Benefits</u>. From and after the Effective Date, to the extent required by Section 1129(a)(13) of the Bankruptcy Code, the Post-Confirmation Debtors shall continue to pay all retiree benefits (as defined in Section 1114 of the Bankruptcy Code), if any, established or maintained by the Debtors prior to the Effective Date. The Debtors believe that there are no such benefits.

10.14 <u>Saturday, Sunday, or Legal Holiday</u>. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

10.15 <u>Section 1146 Exemption</u>. Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the revesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

10.16 <u>Severability</u>. If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtors' option remain in full force and effect and not be deemed affected. However, the Debtors reserve the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

10.17 <u>Headings</u>. The headings used in this Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

10.18 <u>Waiver of Stay</u>. The Debtors request as part of the Confirmation Order a waiver from the Bankruptcy Court of the ten day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the ten day stay of Bankruptcy Rule 6004(g).

10.19 <u>Substantial Consummation</u>. On the Effective Date, the Plan shall be deemed substantially consummated for voting and distribution purposes under Bankruptcy Code sections 1101 and 1127(b).

# ARTICLE 11

## CONFIRMATION REQUEST

11.1    The Debtors and the Committee hereby request confirmation of the Plan pursuant to Section 1129(a) and Section 1129(b) of the Bankruptcy Code.

Dated: August 12, 2010

> eToys Direct 1, LLC; The Parent Company; BabyUniverse, Inc.; Dreamtime Baby, Inc.; eToys Direct, Inc.; PoshTots, Inc.; eToys Direct 2, LLC; eToys Direct 3, LLC; Gift Acquisition, L.L.C.; and My Twinn, Inc.
>
> By: /s/ Charles A. Goodrich
>        Name: Charles A. Goodrich
>        Title:   CEO

Submitted by:

| Counsel for Debtors and Debtors in Possession: | Counsel for Official Committee of Unsecured Creditors: |
|---|---|

/s/ Michael R. Seidl

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
Jeffrey W. Dulberg (CA Bar No. 181200)
Michael R. Seidl (Bar No. 3889)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone:  302-652-4100
Facsimile:  302-652-4400

/s/ Schuyler G. Carroll

ARENT FOX LLP
Schuyler G. Carroll
1675 Broadway
New York, NY 10019
Telephone: 212-484-3900
Facsimile: 212-484-3990

-and-

ELLIOTT GREENLEAF
Rafael X. Zahralddin-Aravena (Bar No. 4166)
1105 Market Street, Suite 1700
Wilmington, DE 19801
Telephone: 302-384-9400
Facsimile: 302-384-9399